

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RJN                               *271 Cadman Plaza East*
F.#2009R01167                     *Brooklyn, New York  11201*

December 3, 2011

**BY HAND AND ECF**

The Honorable Eric N. Vitaliano
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:  United States v. Carlo Profeta
           Criminal Docket No. 10-0010 (S-6) (ENV)

Dear Judge Vitaliano:

The government respectfully submits this letter in response to the defendant's sentencing submission ("Def. Let."), dated December 1, 2011.  Profeta is scheduled to be sentenced by the Court on December 6, 2011 at 11:00 a.m.

I.   Background

On February 1, 2011, Carlo Profeta ("Profeta") pled guilty pursuant to a plea agreement ("Plea Agreement") to Count Eleven of a superseding indictment charging the defendant with racketeering through the collection of unlawful debt, in violation of 18 U.S.C. § 1962(c).

The charges in the superseding indictment stemmed from an investigation into the activities of members and associates of La Cosa Nostra, and in Profeta's case, the involvement of members and associates of the Luchese organized crime family of La Cosa Nostra ("Luchese family") in loan sharking and illegal gambling operations.

As set forth in the Probation Department's Presentence Investigation Report ("PSR"), the investigation revealed that Profeta was a soldier and acting captain in the Luchese family. PSR ¶ 14.  As an acting captain, Profeta directed the conduct of other members and associates of the Luchese family and represented their interests when disputes arose with members and associates of other families.

For example, Profeta directed Luchese family associate and co-defendant Eric Maione ("Maione") to collect interest payments on money Profeta loaned to individuals such as a cooperating witness ("CW1"). Profeta also directed Maione to collect payments from CW1 for a gambling operation CW1 established with Maione and Profeta. PSR ¶¶ 43-49.

CW1 met Profeta in approximately October 2008. Profeta informed CW1 that he was an acting captain for Profeta's co-defendant, Domenico Cutaia ("D. Cutaia"). PSR ¶ 43. Because of D. Cutaia's arrest in another matter (United States v. Domenico Cutaia, 08 CR 97 (BMC)), Profeta was tasked with taking over some of D. Cutaia's responsibilities in the Luchese family. Profeta informed CW1 that CW1 was not permitted to earn money for any other captain and that he was expected to pay $100 a month to Profeta, on top of a portion of whatever other proceeds he earned from criminal activities. PSR ¶ 43.

When CW1 requested a $20,000 loan from Profeta to finance a gambling operation, Profeta called Maione to the meeting to work out the details. Profeta and Maione agreed to provide CW1 with a loan of $20,000 at two percent interest per week ($200 per week). In addition, CW1 agreed to share the proceeds of the gambling operation with Profeta and Maione. PSR ¶¶ 44-46.

Subsequently, at Profeta's direction, Maione collected the interest payments, as well as the gambling proceeds, from CW1. In approximately February 2009, Profeta determined that CW1's weekly payments should increase so that he could begin paying the principal of the loan as well as the interest. In a recorded conversation with CW1, Maione communicated this message to CW1 on Profeta's behalf. Several other of CW1's meetings with Maione between January and February 2009, during which interest payments and gambling proceeds were provided to Maione, were captured on consensual recordings as well. PSR ¶¶ 45, 47-49.

In addition, as an acting captain, Profeta assisted co-defendant Anthony Mannone, a Bonanno family captain, and co-defendant Jerome Caramelli, and Bonanno family associate, to collect a $193,000 debt allegedly owed by CW1. The debt arose after CW1 referred two bettors to a gambling operation run by Caramelli and Mannone. When the bettors lost, Caramelli and Mannone held CW1 responsible for repaying their debt. Profeta attended a sit-down regarding this dispute on February 16, 2009. During that meeting, after Mannone threatened CW1 and demanded that he repay the $193,000 debt, Profeta agreed and instructed CW1 to follow Mannone's orders.

II.  The Presentence Investigation Report

According to the Probation Department's Presentence Investigation Report, the defendant's total offense level is 18. PSR ¶ 152.  With a criminal history category of IV, the corresponding range of imprisonment under the United States Sentencing Guidelines (the "Guidelines") is 41 to 51 months. PSR ¶¶ 168, 219.  This calculation differs from the calculation in the Plea Agreement in one respect.  The PSR includes only a two-point role enhancement, pursuant to U.S.S.G. § 3B1.1(c) while the Plea Agreement contemplated a four-point role enhancement pursuant to U.S.S.G. § 3B1.1(a).  PSR ¶ 148; Plea Ag. ¶ 2.  In addition, the Government agreed to recommend an additional reduction of one point for global disposition of the case, pursuant to U.S.S.G. § 5K2.0.  Plea Ag. ¶ 2.  Thus, the total offense level set forth in the Plea Agreement is 19, resulting in a recommended Guidelines range of 46 to 57 months.

The government respectfully submits that the four-point role enhancement included in the Plea Agreement is appropriate. The defendant was convicted of participating in the affairs of a criminal enterprise, namely, the Luchese family, through the collection of unlawful debt.  The statute provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interest commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  18 U.S.C. § 1962(c).

According to the PSR, the two-point enhancement is appropriate because the debt collection involved fewer than five participants.  PSR ¶ 148.  However, in United States v. Ivezaj, the Court determined that a defendant's role in the racketeering enterprise as a whole, and not the number of individuals involved in each predicate act, serves as the basis for the role enhancement.  568 F. 3d 88, 99 (2d Cir. 2009).  While here, Profeta participated in the affairs of the enterprise through collection of unlawful debt, rather than through a pattern of racketeering activity, as was the case in Ivezaj, the same reasoning should apply.

Thus, the government respectfully submits that, as set forth in the Plea Agreement, the correct offense level is 20. With the recommended one point reduction for global disposition,

3

the defendant's offense level is 19, with a corresponding range of imprisonment of 46 to 57 months.

III. The Defendant's Personal Circumstances

The defendant's submission is focused on his professed desire to lead a law-abiding life after his sentence is complete. To that end, he points out that he used the time he was previously incarcerated to obtain a Bachelor's Degree. Def. Let. at 2. Yet, upon his release, rather than put his skills to use, the defendant continued his criminal activities. Thus, in evaluating the defendant's claim that he should receive leniency on the grounds that he intends to lead a crime-free life after his release, the government respectfully submits that the Court should also consider the pattern of criminal activity in which he has engaged since at least 1975.

The defendant also argues that his role in the offense was limited to mediating a gambling dispute to help a friend. Def. Let. at 4. However, as set forth above, the defendant's conduct was more extensive. In addition to attending a sit-down in order to help Mannone collect a gambling debt allegedly owed by CW1, Profeta directed his criminal associate, Maione, to collect interest payments on a usurious loan Profeta made to CW1, and to collect gambling proceeds from CW1 as well. Thus, Profeta's conduct was not merely the result of an ill-advised decision to help a friend as he suggests in his submission. Id. Rather, it is the result of his ongoing participation in the criminal affairs of the Luchese family.

IV. Conclusion

For the reasons set forth above, and in accordance with the factors set forth in 18 U.S.C. § 3553(a), the government respectfully submits that the Court should impose a sentence within the applicable Guidelines range of 46 to 57 months, but in

4

accordance with the Plea Agreement, takes no position on where within the Guidelines range the sentence should fall.

>Respectfully submitted,
>
>LORETTA E. LYNCH
>United States Attorney
>
>By: _____/s/_____
>Rachel J. Nash
>Assistant U.S. Attorney
>(718) 254-6072

cc: Joel Winograd, Esq.
    John L. Almanza, U.S. Probation